IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

IN RE: PETER PAUL MITRANO,            )
                                      )
        Debtor.                       )
_____        )
                                      )
PETER PAUL MITRANO,                   )    1:12cv32 (LMB/IDD)
                                      )
        Appellant,                    )
                                      )
    v.                                )
                                      )
UNITED STATES OF AMERICA,             )
                                      )
        Appellee.                     )

[FILED APR 16 2012 CLERK U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA]

MEMORANDUM OPINION

Appellant Peter Paul Mitrano appeals the decision of the bankruptcy court granting the United States' Motion to Convert or Dismiss which resulted in the conversion of Mitrano's bankruptcy case from a Chapter 13 to a Chapter 7 proceeding.[1] For the reasons discussed below, the bankruptcy court's decision will be affirmed.

---

[1] This appeal is the second of three appeals Mitrano has filed in connection with his Chapter 13 proceeding. On March 28, 2012, the Court affirmed the bankruptcy court in the first appeal. See Mitrano v. United States, No. 1:12cv33 (LMB/IDD), Dkt. No. 17 (E.D. Va. Mar. 28, 2012).

## I. BACKGROUND

In May 2010, Mitrano filed a Chapter 13 petition for bankruptcy protection in the Southern District of West Virginia, where he was then incarcerated.[2] On June 13, 2011, the bankruptcy court in West Virginia transferred the entire case to the United States Bankruptcy Court for the Eastern District of Virginia where Mitrano, who has completed serving his term of imprisonment, is now a resident and owns property. Mitrano opposed the transfer and has appealed the transfer order to the district court in West Virginia, where it is pending.[3]

Mitrano has filed three proposed Chapter 13 plans in this bankruptcy proceeding. The last proposal was filed on May 18, 2011 and lists "at least $10" monthly payments to the Trustee until Mitrano's release from prison and then payment of

---

[2] On October 22, 2009, the United States District Court for the District of New Hampshire entered a criminal judgment against Mitrano for willful failure to pay child support in violation of 18 U.S.C. § 228(a)(3). He was sentenced to 24 months imprisonment, 1 year of supervised release, $517,406.32 in restitution, which is at issue in this bankruptcy proceeding, and a $100 special assessment. See United States v. Mitrano, No. 1:08cr94, Dkt. No. 132 (D. N.H. Oct. 22, 2009) (judgment).

[3] Although Mitrano includes arguments that the transfer was improper, that the bankruptcy court in this district lacks subject matter jurisdiction due to the pending appeal of the transfer order, and that the court erred by denying Mitrano's motion to stay proceedings until the resolution of the West Virginia appeal, Mitrano only filed a Notice of Appeal as to the order converting the case to a Chapter 7 proceeding, and accordingly, that is the only issue properly before this Court. See Bankruptcy Appellate Record at 1-1, p. 52 (Notice of Appeal).

"available funds," for 60 months. See Bankruptcy Appellate Record ("R.") at 1-8, p. 2 (May 18, 2011 plan); see also id. at 1-5, p. 2 (June 15, 2010 plan, omitting duration of post-release repayment schedule); id. at 1-6, p. 2 (Dec. 6, 2010 plan, omitting duration of post-release repayment schedule). The claims register certified by the bankruptcy court in West Virginia reflects unsecured claims in the amount of $136,750.33, secured claims in the amount of $190,071.67, and priority claims in the amount of $65,684.02. R. at 1-2, p. 5. The claims register did not include the $517,406.32 restitution judgment entered against Mitrano in 2009 as part of his sentence for willful failure to pay child support.[4]

On July 29, 2011, the United States filed a Motion to Convert or Dismiss the Chapter 13 proceeding. Among the several grounds cited for the relief sought were: Mitrano's failure to file tax returns and properly report the full amount of his liabilities, thereby impeding the court's ability to determine whether he exceeded the debt limits of the statute; Mitrano's failure to pursue the Chapter 13 proceeding in good faith and prejudicing his creditors by unreasonably delaying their efforts to recover from him; and, lastly, Mitrano's inadequate income,

---

[4] After his bankruptcy proceeding was transferred from West Virginia, Mitrano's ex-wife, Virginia Kelly, filed a proof of claim in the amount of $418,986.22 for unpaid child support plus $47,000 in attorneys' fees. On March 5, 2012, the Government filed a proof of claim as to the $517,481.32 in restitution.

3

rendering repayment of his debts unfeasible. The bankruptcy court found that Mitrano had acted in bad faith in the Chapter 13 proceeding and accordingly granted the Government's motion to convert to a Chapter 7 case. It is from the order of conversion that Mitrano appeals (Issues 3, 4, and 6 in Mitrano's brief). See R. at 1-1, p. 52 (Notice of Appeal).[5]

## II. DISCUSSION

### A. Standard of Review

On appeal, a district court reverses a bankruptcy court's factual findings only where they are "clearly erroneous." See, e.g., Fed. R. Bankr. P. 8013; In re Tudor Assocs. LTD (II), 20 F.3d 115, 119 (4th Cir. 1994). Questions of law are reviewed de novo. See, e.g., In re Tudor, 20 F.3d at 119. The Court "review[s] for abuse of discretion the bankruptcy court's ultimate decisions to deny a request for dismissal of a Chapter 13 case under § 1307(b) and to convert a case from Chapter 13 to Chapter 7." Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764, 771 (9th Cir. 2008).

### B. Conversion to a Chapter 7 Proceeding

---

[5] Mitrano also argues that the bankruptcy court should not have relied on his failure to file income tax returns for 2009 and 2010 to justify the conversion. It is clear that the bankruptcy court found cause for conversion based on its finding of bad faith, not Mitrano's lack of tax filings. See Oct. 26, 2011 Tr. at 24-28.

4

Mitrano argues that the bankruptcy court lacked a sufficient basis to convert his case to a Chapter 7 proceeding and that it should have dismissed rather than converted the case upon Mitrano's request. Title 11 U.S.C. § 1307(b) provides that "[o]n request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter [Chapter 13]. Any waiver of the right to dismiss under this subsection is unenforceable." Mitrano maintains that he informed the bankruptcy court of his preference to dismiss rather than to have the proceeding converted during the October 26, 2011 hearing and again in writing on October 31, 2011, before the bankruptcy court issued its written order granting the conversion. According to Mitrano, his oral and written requests mandated dismissal because he had an absolute right under § 1307(b) to dismiss the case before it was converted.

The transcript of the October 26 hearing reflects that, in the midst of a somewhat lengthy commentary on other issues, Mitrano stated "[a]nd rather than the case be, I don't know if Your Honor is thinking of dismissing the case or converting it but I would request that it be dismissed rather than it be converted." See Oct. 26, 2011 Tr. at 23:12-16. The court did not acknowledge Mitrano's request, but in response asked a follow-up question regarding Mitrano's real estate. At no time

5

during the hearing, including when the judge orally granted the Government's motion and ordered the Chapter 13 proceeding converted to a Chapter 7, did Mitrano clearly move to dismiss the case in lieu of it being converted. See id. at 28.

Several days after the court orally announced its ruling from the bench, but before the written order issued, Mitrano filed his written request to dismiss. Mitrano had been on notice of the possibility of a conversion as of July 29, 2011, when the Government filed its motion entitled "Motion to Convert or Dismiss." Despite the caption of the motion, Mitrano did not raise the issue of dismissal in lieu of conversion in his opposition. To the contrary, Mitrano asked the court to deny the Government's motion to dismiss. R. at 1-1, p. 47. Despite this very weak record of Mitrano requesting a dismissal, because he is a pro se litigant, the Court will assume that he made a sufficient request for dismissal under § 1307(b).

Assuming that Mitrano made a timely and adequate request for dismissal, conversion was nevertheless appropriate. Title 11 U.S.C. § 1307(c) allows the court to convert a Chapter 13 case to a Chapter 7 case "for cause."[6] Bad faith in filing a

---

[6] A Chapter 13 proceeding allows a qualifying debtor to adjust his debts. Although a trustee is appointed, the trustee acts primarily as a paying agent. Only the debtor, not the creditors, proposes a repayment plan, and if the plan is approved, the debtor makes periodic payments to the trustee who disburses the payments to the creditors. 11 U.S.C. § 1301, et

6

Chapter 13 petition qualifies as "cause" under the statute. See Kestell v. Kestell (In re Kestell), 99 F.3d 146, 148 (4th Cir. 1996); In re Love, 957 F.2d 1350, 1354 (7th Cir. 1992); In re Uzaldin, 418 B.R. 166, 173 (Bankr. E.D. Va. 2009). The court must look to the totality of the circumstances to determine whether a Chapter 13 debtor has acted in bad faith.

> The underlying [bad faith] inquiry is based on fundamental fairness. The non-exhaustive list of the factors includes: the nature of the debt; whether the debt would be non-dischargeable in a chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

In re Uzaldin, 418 B.R. at 173-74.

Mitrano contends that he had an absolute right to dismiss the Chapter 13 case under 11 U.S.C. § 1307(b) regardless of whether or not he acted in good faith, essentially arguing that § 1307(b) trumps subsection (c). Recent case law, however, indicates that a finding of bad faith can negate the debtor's

---

seq. Chapter 13 plans may last for a maximum of three to five years. Id. § 1322(d). The advantage of Chapter 13 to the debtor is that such proceedings allow the debtor to manage his property while he pays his debts and ultimately results in a discharge, the scope of which is broader than a Chapter 7 discharge. See id. § 1328.

A Chapter 7 proceeding results in liquidation of the debtor's assets. See 11 U.S.C. § 701, et seq. A trustee is appointed to sell the debtor's property and make distributions to creditors. See id. § 704.

7

right to choose dismissal in lieu of conversion. In Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365 (2007), the Supreme Court addressed 11 U.S.C. § 706(a), which provides that a Chapter 7 debtor "may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted...Any waiver of the right to convert a case under this subsection is unenforceable." Section 706(a) uses language parallel to that in § 1307(b). The Court emphasized that because the bankruptcy system is meant to protect the "honest but unfortunate debtor[]," a bad-faith debtor does not have an absolute right to convert his case under § 706(a). Id. at 374. The Court further held that

> Nothing in the text of either § 706 or § 1307(c) (or the legislative history of either provision) limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor. On the contrary, the broad authority granted to bankruptcy judges to take any action that is necessary or appropriate 'to prevent an abuse of process' described in § 105(a) of the Code, is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors.

Id. at 374-75. In the wake of Marrama, courts are divided as to whether a bad-faith debtor has an absolute right to dismiss a Chapter 13 case under § 1307(b). Compare In re Williams, 435 B.R. 552 (Bankr. N.D. Ill. 2010) (finding that "the language of

8

§ 1307(b) accords debtors an unlimited right to dismissal of unconverted Chapter 13 cases" unaffected by a finding of bad faith), with In re Rosson, 545 F.3d at 774 (holding that "the debtor's right of voluntary dismissal under § 1307(b) is not absolute, but is qualified by the authority of a bankruptcy court to deny dismissal on grounds of bad-faith conduct or 'to prevent an abuse of process'") (quoting 11 U.S.C. § 105(a)), and In re Kotche, 457 B.R. 434 (Bankr. D. Md. 2011) (applying Marrama to Chapter 13 debtor's motion to dismiss under § 1307(b) and holding that "[t]here is no indication that Section 1307(b) is intended to provide the dishonest debtor a right to misuse the protections of a bankruptcy case and then escape with impunity").

This Court agrees with those courts holding that the right to dismissal upon request under § 1307(b) is limited to good-faith debtors. In essence, the Supreme Court in Marrama recognized that through bad-faith or fraudulent conduct, a debtor may forfeit certain rights otherwise available under the bankruptcy code. In light of the bankruptcy court's power to "prevent an abuse of process," see § 105(a), there is no principled reason to allow bad-faith debtors access to dismissal under § 1307(b) while disallowing conversion under § 706(a). "[T]he inherent power of every federal court to sanction abusive litigation practices" similarly persuades the Court that the

9

reasoning in <u>Marrama</u> should apply to the case of a Chapter 13 debtor seeking dismissal under § 1307(b). <u>See</u> <u>Marrama</u>, 549 U.S. at 376 (internal citation omitted).

Conversion was entirely proper in this case in light of Mitrano's exceptional bad faith conduct. As the bankruptcy court found, it is absolutely clear that Mitrano has no intention of paying his creditors; instead, he has abused the bankruptcy system by using it as an "alternative forum to litigate the claims." <u>See</u> Oct. 26, 2011 Tr. at 27:1-8, 15-16. The court also rightly observed that Mitrano had done "everything possible" to avoid paying his debts. <u>Id.</u> at 27:2-5. These findings are fatal to Mitrano's appeal. Under Chapter 13

> the adjudication of disputed claims is secondary to the goal of repaying creditors under a plan. Nothing in the history or structure of the Bankruptcy Code suggests that Congress ever intended the code as simply providing an alternative federal forum for the resolution of state law claims, let alone serving as a forum of last resort when a litigant had been unsuccessful in other courts.

<u>In re Sawyer</u>, No. 07-10252, 2007 Bankr. LEXIS 2036, at *20 (Bankr. E.D. Va. June 13, 2007). In a previous Chapter 13 case filed by Mitrano in 2008, Judge Mitchell of the United States Bankruptcy Court for the Eastern District of Virginia similarly concluded that Mitrano had acted in bad faith, after finding that

> the debtor has rather clearly filed this case not for the purpose of paying creditors but simply to have a

> forum for litigating with them. Almost every claim, including those that have been reduced to judgment, are characterized by the debtor as disputed.

In re Mitrano, No. 08-12890, 2008 Bankr. LEXIS 4177, at *7-8 (Bankr. E.D. Va. Sept. 25, 2008).

The evidence in the present case strongly supports the bankruptcy court's finding of bad faith. As in the 2008 proceeding, Mitrano characterizes various of his debts as disputed, despite their being reduced to judgment and upheld on appeal. For example, Mitrano initially indicated in his schedules that an $88,000 sanction imposed against him by the United States District Court for the Eastern District of Virginia and owed to William Phillips was unknown, contingent, unliquidated, and disputed. He later amended his schedules entirely omitting the debt due to Phillips, thereby undercutting the accuracy of his schedules. R. at 1-4, p. 13; 1-7, pp. 12-14.[7] During oral argument, however, Mitrano acknowledged the existence of the sanction judgment that the Fourth Circuit declined to review several years ago. See Oct. 26, 2011 Tr. at 12:14-15:24. The bankruptcy court found that no good faith dispute existed as to the sanction and that Mitrano's

---

[7] In his revised schedules, Mitrano did include a debt owed to Elaine Warshell, who was apparently entitled to the same $88,000 monetary sanction. See R. at 1-7, p. 14; Oct. 26, 2011 Tr. at 15:21-24. The debt to Warshell was again described as unknown, contingent, unliquidated, and disputed in the amended Schedule F.

11

mischaracterization of this debt and failure to include it accurately on his schedules constituted bad faith. See id. at 25:13-26:4.

Mitrano similarly indicated in his amended schedules various debts to family members, but described the amount of the debts, the dates they were incurred, and the consideration for them as "unknown." See R. at 1-7, pp. 12-13 (Schedule F regarding Peter Paul Mitrano (appellant's father), Marie Mitrano, Dennis Mitrano, John Mitrano, and Karen Snyder). At oral argument, Mitrano again failed to articulate even approximate values for these debts.[8] The bankruptcy court rightly viewed Mitrano's evasiveness in his schedules and at the hearing as yet more evidence of bad faith, as Mitrano should have been able to provide a reasonable estimate of the amount of the debts he owed family members. See Oct. 26, 2011 Tr. at 25:4-12.

In addition to the incomplete and inaccurate schedules, in Mitrano's Chapter 13 plan he proposed paying only $10 per month toward his debts, despite the West Virginia claims register reflecting $65,684.02 in priority claims to be paid in full. See R. at 1-2, p. 5 (claims register); 11 U.S.C. § 1322(a)(2). Moreover, as the Fourth Circuit has explained, "Congress never

---

[8] Mitrano did list a $300 debt to his son, Peter Mitrano. See R. at 1-7, p. 13; Oct. 26, 2011 Tr. at 16:25-17:8.

12

intended...that Chapter 13 serve as a haven for debtors who wish to receive a discharge of unsecured debts without making an honest effort to pay those debts." Deans v. O'Donnell, 692 F.2d 968, 972 (4th Cir. 1982). For this reason, the very small monthly payment proposed by Mitrano renders his plan unfeasible on its face and strongly suggests that he never intended to actually pay off his debts.

Furthermore, Mitrano's egregious efforts to avoid his child support restitution obligation are well-documented, further corroborating a finding of bad faith. At oral argument on the motion to convert, Mitrano admitted that he has spent eleven years fighting the child support order. Oct. 26, 2011 Tr. at 21:5-7. In affirming Mitrano's criminal conviction for willful failure to pay child support, the Court of Appeals for the First Circuit detailed the many avenues Mitrano had used to challenge the validity of the state child support order. In particular, the court observed that Mitrano appealed the order to the New Hampshire Supreme Court and to the United States Supreme Court, which denied review; he then "filed suits and appeals in four states (New Hampshire, Vermont, Virginia, and Maryland) and in two federal courts (the District of New Hampshire and the Eastern District of Virginia)," each time unsuccessfully arguing that the child support order was invalid. See United States v. Mitrano, 658 F.3d 117, 119 (1st Cir. 2011). In the 2008

13

bankruptcy proceeding, Judge Mitchell similarly noted Mitrano's many efforts to contest the child support claim. See In re Mitrano, 2008 Bankr. LEXIS 4177, at *8. Despite all of these failed challenges, in the current bankruptcy proceeding, Mitrano has characterized his child support obligation as a disputed, contingent, and unliquidated debt. He also filed an adversary proceeding contesting the court-ordered restitution for child support. The bankruptcy court's dismissal of that adversary proceeding was recently upheld on appeal. See R. at 1-7, p. 8 (Schedule D); Mitrano v. United States, No. 1:12cv33 (LMB/IDD), Dkt. No. 17 (E.D. Va. Mar. 28, 2012) (Memorandum Opinion).

Mitrano's bad-faith conduct in this bankruptcy case is part of a pattern of his abusing judicial process. Courts in other contexts have recognized Mitrano's bad-faith litigation conduct, including the Fourth Circuit's finding of "a clear pattern of harassing lawsuits and abusive behavior." See Mitrano v. Warshell, 150 F. App'x 277, 280 (4th Cir. Oct. 20, 2005). The Fourth Circuit went on to enjoin Mitrano from filing further civil appeals until he paid various monetary sanctions and obtained the district court's certification that a potential appeal was not frivolous. Id. at 280-81. In addition to the 2008 Chapter 13 proceeding filed in this district and dismissed for bad faith, the United States Bankruptcy Court for the Middle District of Florida found that Mitrano filed an involuntary

14

petition against another person in bad faith. See In re Ballato, 252 B.R. 553 (Bankr. M.D. Fla. 2000).

Mitrano takes issue with the bankruptcy judge's reference at oral argument to Judge Mitchell's finding of bad faith in the 2008 bankruptcy case. This challenge is without merit. The record in this case, including Mitrano's proposed Chapter 13 plans, schedules, and his admissions in open court, fully support an independent finding of bad faith. Moreover, a court may consider "the debtor's history of filings and dismissals" in determining whether a Chapter 13 proceeding should be dismissed for cause due to bad faith. In re Brown, 399 B.R. 162, 169 (Bankr. W.D. Va. 2009) (quoting In re Leavitt, 171 F.3d 1219, 1224 (9th Cir. 1999)). Similarly, in the context of the good faith requirement for confirmation of a Chapter 13 plan under 11 U.S.C. § 1325(a)(3), the Court must look to the totality of the circumstances and may consider "the debtor's past bankruptcy filings [and] the debtor's honesty in representing facts." Deans, 692 F.2d at 972. In the present case, the bankruptcy judge expressly inquired of Mitrano what facts had changed since the dismissal of his 2008 bankruptcy proceeding. He concluded that Mitrano's recent conduct, including his failure to make reasonable efforts to ascertain the amounts of the family debts in the years since 2008, was certainly evidence of bad faith and

"a continuation" of Mitrano's efforts to avoid paying his creditors. See Oct. 26, 2011 Tr. at 24:17-19, 25:4-12, 27:1-6.[9]

### III. CONCLUSION

Mitrano's repeated use of the bankruptcy system for an improper purpose clearly supports the bankruptcy court's finding of bad faith and justifies the resulting conversion of Mitrano's case from a Chapter 13 to a Chapter 7 proceeding. Accordingly, the decision of the bankruptcy court to convert his petition to a Chapter 7 proceeding will be affirmed by an Order to accompany this Memorandum Opinion.

Entered this 16th day of April, 2012.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

---

[9] Mitrano also argues in passing that the Court "should not rely upon the facts stated" in the First Circuit's opinion affirming his criminal conviction. Appellant Mem. at 35. The history of Mitrano's litigation behavior and the finality of the child support restitution order, however, are factors highly relevant to the issues before this Court. As explained in the Court's first Memorandum Opinion, any attempt to collaterally attack the restitution order, which was issued and upheld by other courts, is patently inappropriate.